HORACE GREENLEE et al., Appellants, v PETER SHERMAN, as Executor of PHILIP SHERMAN, Deceased, Defendant, and MAIN CARE HEATING SERVICE, INC., Respondent. (Action No. 1.)

HANOVER INSURANCE COMPANY, Respondent, v PETER SHERMAN, as Executor of PHILIP SHERMAN, Deceased, et al., Defendants, and HORACE GREENLEE et al., Appellants. (Action No. 2.)

Third Department, January 12, 1989

## APPEARANCES OF COUNSEL

*Bouck, Holloway, Kiernan & Casey (Michael Jon Longstreet* of counsel), for appellants.

*Francis E. Lehner (Edward C. Fassett, Jr.,* of counsel), for Main Care Heating Service, Inc., respondent.

*Carter, Conboy, Bardwell, Case, Blackmore & Napierski (Dianne Bresee Mayberger* of counsel), for Hanover Insurance Company, respondent.

## OPINION OF THE COURT

CASEY, J. P.

These two actions arise out of a 1980 transaction between Horace and Annie Greenlee, plaintiffs in action No. 1, and Philip Sherman, the sole proprietor of Sherman Fuel and Oil Burner Service, whereby Sherman installed a combination wood/oil furnace in the basement of the Greenlees' house. The Greenlees used the furnace until March 30, 1984, when a fire substantially destroyed their house. It is alleged that the fire was caused by the improper installation of the flue pipe from the furnace, which resulted in the exposure of a wooden joist to intense radiant heat while the furnace was operating. This exposure to intense heat allegedly caused a chemical process, known as pyrolyisis, in the wooden joist which ultimately lowered the ignition temperature of the wood to the point where it was ignited by the flue pipe.

In action No. 1, the Greenlees seek to recover damages based upon Sherman's negligent installation of the furnace. Named as defendants in action No. 1 are the executor of Sherman's estate* and Main Care Heating Service, Inc. (hereinafter Main Care), as the successor in interest to Sherman Fuel and Oil Burner Service. In action No. 2, Hanover Insurance Company (hereinafter Hanover), which issued to Sherman a "Comprehensive General Liability Policy" that was in effect during the period April 1978 to April 1982, seeks a declaratory judgment declaring that it is not obligated to defend or indemnify Sherman's estate in action No. 1. Main Care moved in action No. 1 for summary judgment dismissing the Greenlees' complaint and Supreme Court granted the motion. In action No. 2, Hanover moved for summary judgment declaring that it was not obligated to defend or indemnify Sherman's estate in action No. 1. Supreme Court granted Hanover's motion. The Greenlees have appealed in both cases.

The issue raised by the appeal in action No. 1 is whether there exists a triable issue of fact on the question of Main Care's liability as a successor in interest to Sherman's business, pursuant to an agreement between Sherman and Main Care, dated November 19, 1980. "It is the general rule that a

---

* Sherman died in 1982.

corporation which acquires the assets of another is not liable for the torts of its predecessor * * *. There are exceptions * * *. A corporation may be held liable for the torts of its predecessor if (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations" *(Schumacher v Richards Shear Co.,* 59 NY2d 239, 244-245). Main Care relies upon this general rule, while the Greenlees contend that the second and third exceptions are applicable. In *Grant-Howard Assocs. v General Housewares Corp.* (63 NY2d 291, 296) the Court of Appeals noted that these two exceptions "are based on the concept that a successor that effectively takes over a company in its entirety should carry the predecessor's liabilities as a concomitant to the benefits it derives from the good will purchased". But the court prefaced this remark with the following explanation of the genesis of the successor liability theory: "Allowing recovery in tort against a successor corporation is merely an extension of the concept of products liability, which calls for the burden of consumer injuries to be borne by the manufacturer, who can transfer the costs to the general public as a component of the selling price. Strict liability assures that a responsible source is available to compensate the injured party" *(supra,* at 296).

The case at bar does not involve the concept of products liability. The Greenlees' action is based upon the negligence of Sherman in the installation of the furnace; there is no claim that Sherman manufactured or sold a defective product. The Greenlees contracted directly with Sherman for certain services to be performed by him, and their claim for damages is based upon Sherman's negligence in performing those services. In these circumstances, the public policy considerations underlying the concept of products liability *(see, Codling v Paglia,* 32 NY2d 330, 340-341) are not present. Therefore, based upon the previously quoted language of the Court of Appeals in *Grant-Howard Assocs. v General Housewares Corp. (supra),* it appears that the successor liability theory is not applicable in this case.

In any event, we find no proof in the record to support the Greenlees' contention that there was a consolidation or merger of Main Care and Sherman's business or that Main Care is a mere continuation of Sherman's business. As to the consolidation or merger claim, Sherman, the sole proprietor of

the selling business, did not become involved with Main Care, either as a shareholder or as an employee; Main Care did not acquire either the cash on hand or the accounts receivable of Sherman's business; Main Care did not hire any employees of Sherman's business; and Main Care did not install furnaces, which was at least a part of Sherman's business. As to the "mere continuation" claim, that exception refers to corporate reorganization (Schumacher v Richards Shear Co., 59 NY2d 239, 245, supra), which did not occur here. Main Care had been in existence for at least 12 years prior to its purchase of Sherman's business and it continued in substantially the same form thereafter, with the addition of Sherman's assets. In short, Main Care cannot be viewed as a "mere continuation" of Sherman's business. Thus, assuming that the successor liability theory is applicable outside the context of products liability, the Greenlees' proof was inadequate to defeat Main Care's motion for summary judgment (see, Heights v U. S. Elec. Tool Co., 138 AD2d 369).

In action No. 2, Hanover denied coverage on the basis of the definitions of occurrence and property damage in the liability policy issued to Sherman. The policy defines occurrence as "an accident, including continuous or repeated exposure to conditions, which results in * * * property damage neither expected nor intended from the standpoint of the insured". Property damage is defined as "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period". Hanover contends that since the fire occurred after the expiration of the policy period, the physical injury to the Greenlees' house for which they seek damages in action No. 1 does not constitute property damage within the meaning of the policy. The Greenlees contend that the definitions are ambiguous, at best, and should be construed as requiring only that some physical injury occur during the policy period. Thus, according to the Greenlees, since the wooden joist sustained some injury during the policy period due to the exposure to intense heat, there was an occurrence which triggered the policy's coverage, making Hanover liable for any and all subsequent related physical injury to the property, irrespective of whether the subsequent injury occurred during

the policy period. We agree with Supreme Court that there is no coverage in this case.

Even if we accept the Greenlees' contention that there was an occurrence within the meaning of the policy due to the chemical decomposition of the wooden joist which occurred during the policy period, the policy cannot be construed as affording coverage for the subsequent physical injury to the remainder of the structure due to the fire which occurred after the expiration of the policy period. Pursuant to the terms of the policy, coverage is provided for "property damage to which this insurance applies, caused by an occurrence". Thus, there must not only be an occurrence, but also "property damage to which this insurance applies", and it is clear from the definition of property damage that the physical injury to the property must occur during the policy period in order to be considered "property damage to which this insurance applies". As noted by Supreme Court, the Greenlees seek in action No. 1 to recover damages due to the physical injury to their property caused by the fire, not damages due to the physical injury to the wooden joist caused during the policy period, and we agree that the injuries are separate and distinct for the purposes of determining coverage under the policy.

In *National Cas. Ins. Co. v City of Mount Vernon* (128 AD2d 332), the insurer denied coverage under its comprehensive law enforcement policy, issued to the City of Mount Vernon, in a false arrest and false imprisonment action against the city. The policy included false arrest, detention or imprisonment in its definition of personal injury, and the term occurrence was defined as "an event, including continuous or repeated exposure to conditions, which results in PERSONAL INJURY * * * during the policy period" *(supra,* at 334). The insurer denied coverage on the ground that the arrest occurred prior to the effective date of the policy and, therefore, was not an occurrence. Noting that the language of the occurrence clause "ascribes no temporal relevance to the causative event preceding the covered injury" *(supra,* at 336), the Second Department concluded that "the operative event triggering exposure, and thus resulting in coverage under the policy, is the sustaining of a specified injury during the policy period" *(supra,* at 337). Since a portion of the personal injury—unlawful imprisonment—occurred after the effective date of the policy (seven days of a total of some 18 months of incarceration), the insurer was found to have a duty to defend and indemnify

under its policy *(supra,* at 338). The Greenlees cite this case in support of their claim that coverage is triggered by some injury during the policy period. However, in defining the extent of the insurer's duty to indemnify, the court held that it was limited to the covered injuries sustained during the policy period, i.e., the seven-day period between the effective date of the policy and the date of the release from jail *(supra)*. In the case at bar, the Greenlees do not seek to recover damages for any covered injuries sustained during the policy period; rather, they seek to recover damages for injuries sustained due to the fire, which occurred after the expiration of the policy. Accordingly, the Greenlees' complaint in action No. 1 does not allege any facts or grounds on which Hanover might eventually be obligated to indemnify Sherman, its insured, and therefore it has no duty to defend *(see, Servidone Constr. Corp. v Security Ins. Co.,* 64 NY2d 419, 424).

The Greenlees contend that the fire was merely the "manifestation" of the continuing injury sustained during the policy period, but the record does not support this claim. On the contrary, the expert evidence submitted on the motions establishes that both the continuing injury and the fire were caused by the presence of an intense radiant heat source in close proximity to the wooden joist. Had the heat source been removed at any time prior to the fire, no further injury to the wooden joist would have occurred, and there would have been no fire, despite the chemical decomposition of the wooden joist allegedly caused during the policy period. On the other hand, with the heat source present, the fire eventually would have occurred, irrespective of whether the wooden joist had sustained some injury during the policy period. Accordingly, the fire was not the "manifestation" of an injury sustained during the policy period, but the "manifestation" of the *condition* created by Sherman's negligence during the policy period. Hanover's policy does not provide coverage for injury sustained after the expiration of the policy period as the result of a condition created during the policy period *(see, Van Wyck Assocs. v St. Paul Fire & Mar. Ins. Co.,* 115 Misc 2d 447, 450-451, *affd* 95 AD2d 989, *lv denied* 60 NY2d 559).

For the reasons set forth above, the rulings in both actions should be affirmed.

MIKOLL, YESAWICH, JR., LEVINE and MERCURE, JJ., concur.

Orders and judgment affirmed, with costs.