(No. 67839.—

PAUL DE LOS REYES *et al.*, Appellees, v. THE TRAVELERS INSURANCE COMPANIES, Appellant.

*Opinion filed March 22, 1990.*

CALVO, J., dissenting.

Raymond R. Cusack, of Johnson, Cusack & Bell, Ltd., of Chicago (Thomas H. Fegan, of counsel), for appellant.

Topper & Weiss, Ltd., of Chicago (Barry Weiss, of counsel), for appellees.

JUSTICE MILLER delivered the opinion of the court:

Plaintiff Paul de los Reyes, an Illinois resident, was injured in an automobile accident in Indiana on August 18, 1984. The driver responsible for the accident was insured by defendant, Travelers Insurance Companies. Defendant offered to pay plaintiffs, Paul and Priscilla de los Reyes, $10,000, which defendant contends is the upper limit of the coverage for bodily injury under the policy. Plaintiffs rejected the offer and sought a declaratory judgment in the circuit court of Cook County that the coverage limit for bodily injury under the policy is $25,000 per person, rather than $10,000 as Travelers contends. The trial court found defendant's liability to be limited to $10,000 and granted defendant's motion for summary judgment, further denying a similar motion for

summary judgment filed on behalf of plaintiffs. Plaintiffs appealed the judgment of the trial court. On appeal, a divided appellate court found that the policy issued by defendant provided coverage for bodily injury in the amount of $25,000, rather than $10,000 as the trial court had found. (175 Ill. App. 3d 169.) Accordingly, the appellate court reversed the trial court order granting defendant's motion for summary judgment and granted plaintiffs' motion for summary judgment instead. We granted defendant's petition for leave to appeal (107 Ill. 2d R. 315).

The relevant facts are undisputed. On August 18, 1984, Remar de los Reyes, Paul de los Reyes' brother, was driving Paul's pickup truck; plaintiff Paul de los Reyes was a passenger in the vehicle. Remar, Paul, and Paul's children were traveling to Remar's home in Massachusetts. While driving through Indiana, Remar lost control of the vehicle, causing it to overturn, and Paul was severely injured.

Primary coverage for the accident was provided by Paul and Priscilla de los Reyes' insurance company. In addition, Remar, the driver, was insured by defendant, Travelers Insurance Companies, under a policy issued in Massachusetts to Aquilina Panalagin, Paul and Remar's sister. The policy named Remar as an additional insured and limited coverage for bodily injury to $10,000 per person. However, the insured paid an additional premium to obtain optional coverage for accidents occurring outside Massachusetts. The relevant portion of the optional provision states:

> "If the accident occurs in any other state or in a Canadian province and you have purchased any coverage at all under this Part, your policy will automatically apply to that accident as follows:
>
> If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for bodily injury or property damage higher than the limits you have purchased, your policy will provide the higher specified limits.

2. A compulsory insurance or similar law requiring your auto to have insurance whenever it is used in that state or province, your policy will provide at least the required minimum amounts and types of coverage."

The State of Indiana, where the accident occurred, has a financial responsibility law entitled the Indiana Motor Vehicle Safety-Responsibility and Driver Improvement Act (Ind. Code §9—2—1—15 (Burns 1987)). The statute reads in pertinent part:

"Proof of financial responsibility shall mean proof of ability to respond in damages for liability thereafter incurred, arising out of the ownership, maintenance or use of a motor vehicle, in the amount of twenty-five thousand dollars ($25,000) because of bodily injury to or death of any one (1) person ***. Proof in the amounts required by this section shall be furnished for each motor vehicle registered by such person."

At the time of plaintiff's accident, section 9—2—1—16 of the Act, since amended, provided:

"Proof of financial responsibility when required under this act *** may be given by the following alternate methods; either by proof that a policy or policies of motor vehicle liability insurance have been obtained and are in full force and effect, or that a bond has been duly executed, or that deposit has been made of money or securities, all as hereinafter provided." Ind. Code §9—2—1—16 (Burns 1987).

In construing the policy provision questioned here, we look to Indiana law to determine the meaning and purpose of Indiana's financial responsibility statute. Decisions interpreting the Indiana Act make it clear that the Act's provisions come into play only after a motorist has been involved in an accident. (*Grimes v. Government Employees Insurance Co.* (Ind. App. 1980), 402 N.E.2d

50.) Once a driver has been involved in an accident, the driver must provide the Commissioner of the Bureau of Motor Vehicles with proof that he will be able to respond in damages in the event of future accidents. (*Grimes*, 402 N.E.2d at 52.) Section 9—2—1—16 of the Act provides that financial responsibility may be proved by insurance, by bond, or by a deposit of money or securities. (Ind. Code §9—2—1—16 (Burns 1987).) The purpose of the statute is to increase public protection against a select group of drivers; that is, those who have been involved in a previous accident. *Green v. State Farm Mutual Automobile Insurance Co.* (1976), 168 Ind. App. 434, 343 N.E.2d 828.

Plaintiffs concede that Remar de los Reyes, the driver in the instant case, was not subject to the statute at the time of the accident since he had no prior accidents. Plaintiffs contend that although the Act does not apply to Remar de los Reyes, defendant failed to limit the application of its financial responsibility provision to those instances where compliance with financial responsibility laws is required.

Defendant argues that since Indiana's financial responsibility statute does not apply to the insured, coverage limits in the amounts specified in the statute should not be read into the policy. Defendant cites in support of its argument *Grimes v. Government Employees Insurance Co.* (Ind. App. 1980), 402 N.E.2d 50, *Green v. State Farm Mutual Automobile Insurance Co.* (1976), 168 Ind. App. 434, 343 N.E.2d 828, and *Wisdom v. Stonewall Insurance Co.* (1986), 139 Ill. App. 3d 1082. In each case, the court held that because the insured was not subject to the State's financial responsibility law, the coverage limits of the policy involved were not increased to the amounts specified in the statute.

The appellate court found that the policy provision in question operated to increase the coverage for bodily in-

jury for this accident from $10,000 to $25,000. In reaching its decision, the appellate court focused on the wording of the policy provision, particularly on defendant's use of the word "specify," rather than the word "require." The provision states that when an accident occurs in a State other than Massachusetts, defendant will provide the coverage limits of the State's financial responsibility law if the statute "specif[ies] limits of liability" higher than those otherwise provided under the policy. The appellate court, relying on a dictionary definition, noted that the word "specify" means "[t]o mention or name in a[n] *** explicit manner." The appellate court concluded that the Indiana statute explicitly mentions coverage limits; therefore, it reasoned, those limits should be incorporated into the policy, regardless of whether the statute required the insured to carry such coverage at the time of the accident. The appellate court found the cases cited by defendant to be inapposite because the language used in those policies differed from the wording of defendant's policy.

We find that because the insured was not subject to the Indiana financial responsibility law at the time of the accident, defendant's liability under the policy for this accident is limited to $10,000.

The function of the court in construing an insurance policy is to ascertain and enforce the intention of the parties as expressed in the agreement. (*Lentin v. Continental Assurance Co.* (1952), 412 Ill. 158.) An insurance contract should be construed as a whole (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486), and the construction given the policy should be a natural and reasonable one (*Canadian Radium & Uranium Corp. v. Indemnity Insurance Co. of North America* (1952), 411 Ill. 325).

The instant policy contains two optional coverage provisions. The first provides that if the State where the ac-

cident occurs has a financial responsibility law "specifying limits of liability" higher than the limits otherwise provided under the policy, the policy will provide the higher specified limits. The second provision states that if the State where the accident occurs has a compulsory insurance or similar law "requiring" the insured to carry insurance, the policy will provide at least the required minimum amounts and types of coverage.

It is apparent in the policy that the purpose of the provisions is to ensure that with the optional coverage defendant's insureds are in compliance with the financial responsibility and compulsory insurance laws of any State in which they drive. Thus, the reasonable construction of the policy is that an insured subject to the provisions of the financial responsibility laws of any State would be provided coverage up to the minimum amount of required financial responsibility specified in the statute; similarly, the policy would provide insurance coverage in the amount required by any State's compulsory insurance law.

We do not find that defendant's use of the word "specify," rather than the word "require," in the financial responsibility provision operates to increase the policy's coverage limits. The Indiana financial responsibility act does not require motorists to carry insurance. Even when drivers have been involved in a prior accident and are therefore subject to the provisions of the Act, the Act provides that financial responsibility may be proved by the posting of a bond, or by a deposit of money or securities, as alternatives to proof that the person has purchased a policy of insurance. (Ind. Code §9—2—1—16 (Burns 1987).) Compulsory insurance statutes, on the other hand, do require drivers to carry automobile insurance. Because financial responsibility statutes generally do not require motorists to carry insurance, defendant's use of the word "specify" in the financial responsibility

provision more precisely reflects the intent of the parties than would the word "require."

The parties in the case before us agree that the insured had no accidents prior to the one in question here and that he was not subject to Indiana's financial responsibility law at the time of the accident. Because the insured was not subject to the Act, the policy provision in question did not increase the coverage limits of the policy to the minimum amount of required financial responsibility specified in the Act. To hold otherwise would convert the financial responsibility provision of the policy into a compulsory insurance provision, with limits of liability in the minimum amount required of drivers who have had prior accidents in any State having a financial responsibility law. Such a result could not reasonably have been intended by the parties.

Accordingly, we find that the appellate court erred in concluding that the financial responsibility provision of the policy operated to increase coverage limits under the policy. Since the Indiana financial responsibility act does not specify limits of liability higher than the $10,000 coverage limit otherwise provided by the policy, we find defendant's liability under the policy for this accident to be limited to $10,000.

For the foregoing reasons, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE CALVO, dissenting:

I cannot subscribe to the majority opinion, which ignores the clear and unambiguous language of the policy provision in question and, essentially, rewrites the parties' agreement for them to reflect what the majority believes the insurer meant, but did not say, when it drafted

the policy. I believe a sophisticated corporate entity, such as the defendant, should be capable of drafting a policy which accurately reflects its intentions and should not receive the aid of this court in avoiding a clear contractual commitment.

If the provisions of an insurance policy are clear and unambiguous, if the words of a policy can reasonably be given their plain, ordinary, and popular meaning, then there is no need for construction, the provisions will be applied as written, and the parties will be bound to the agreement they made. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 495; *United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 4; *Dora Township v. Indiana Insurance Co.* (1980), 78 Ill. 2d 376, 378.) In the absence of ambiguity, the intention of the parties at the time the contract was entered into must be ascertained by the language utilized in the contract itself. *Lenzi v. Morkin* (1984), 103 Ill. 2d 290, 293.

The policy, issued in Massachusetts, limits coverage for bodily injury to $10,000 per person, but, where an accident occurs in another State, and the other State has "[a] financial responsibility or similar law specifying limits of liability for bodily injury or property damage higher than the limits *** purchased, [the] policy will provide the higher specified limits." I perceive no ambiguity. Indiana, the State where the accident occurred, has "a financial responsibility law *** specifying limits of liability [$25,000] *** higher than the limits *** purchased [$10,000]." The policy unequivocally states, under those circumstances, the policy "will provide the higher specified limits." Defendant could have restricted its liability by merely requiring that the financial responsibility law be "applicable to the accident." It did not do so. We must not inject terms and conditions different from

those agreed upon by the parties. *Lentin v. Continental Assurance Co.* (1952), 412 Ill. 158, 162-63.

I am aware that all the provisions of an insurance contract, rather than an isolated part, should be read together to interpret it and to determine whether an ambiguity exists; however, in applying the rules of interpretation, the words in the policy should be given their plain and ordinary meaning, and the court should not search for an ambiguity where there is none. (*Schnackenberg*, 88 Ill. 2d at 5.) Here, the policy provision can be applied as written, in keeping with the "plain and ordinary" meaning of the words defendant employed. It does not conflict with any other provisions of the policy. It should be applied in accordance with the language defendant used.

Even assuming, *arguendo*, the provision *is* subject to different interpretations, such ambiguity is to be resolved in favor of the insured, and against the insurance company that drafted the contract of insurance. (*Schnackenberg*, 88 Ill. 2d at 4; *Dora Township*, 78 Ill. 2d at 379; *Kirk v. Financial Security Life Insurance Co.* (1978), 75 Ill. 2d 367, 371.) The majority discerns ambiguity where there is none, then resolves that ambiguity in favor of the insurance company, all the while purporting to ascertain and enforce the intention of "the parties" as expressed in the agreement. It is, no doubt, because of the difficulty inherent in ascertaining the "intention of the parties"—usually, as here, an insured who probably never thought much about the actual application of the provision when the policy was purchased, and an insurance company that wants to limit its coverage to the extent possible—that the rule developed resolving ambiguities in favor of the insured, the party who, in most instances, does not have the opportunity to participate in the drafting process. The majority fails to

explain why this rule of construction is inoperative in this case.

Because I find no ambiguity, I see no need for further construction of the policy provision in an attempt to ascertain "the parties' " intent. Even if there were ambiguity, I would resolve the ambiguity in favor of the insured. Accordingly, I respectfully dissent.