[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT (#147)
I. FACTS
The following facts are alleged in the amended complaint, #140. At all relevant times, defendant William J. Pytlik, Sr. ("Pytlik") was the owner and an agent, employee and servant of the Higganum Oil Company, ("Higganum Oil") with a principal place of business in Higganum, Connecticut. On our about July 13, 1988, Pytlik installed a new furnace in the home of plaintiffs Lois and Lauren Copperthite.[1] On or about September 1988, Higganum Oil Company merged with CT Page 8190 the defendant William Peterson Oil Company, Inc. ("Peterson Oil") and Peterson Oil continued the business of Higganum Oil and assumed the liabilities of Higganum Oil. On December 5, 1988, Lauren Copperthite and Lois Copperthite were injured by carbon monoxide poisoning.
The plaintiffs have brought this action against the defendants under the Products Liability Act, General Statutes Secs. 52-572m through 52-572r.
Peterson Oil now moves for summary judgment on the ground that it is not liable for the torts committed by Pytlik or by Higganum Oil. The pleadings are closed. The parties have filed memoranda of law and appended appropriate documentation thereto.
II. DISCUSSION
 "`Practice Book Sec. 384 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."'" Gurliacci v. Mayer, 218 Conn. 531, 561-62, 590 A.2d 914 (1991).
Zauner v. Brewer, 220 Conn. 176, 180, 596 A.2d 388 (1991).
"[T]he party seeking summary judgment has the burden of showing the nonexistence of any material fact." Connell v. Colwell, 214 Conn. 242, 246, 571 A.2d 116 (1990) (citations omitted). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Id., 246-47 (citations omitted). "To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Fogarty v. Rashaw,193 Conn. 442, 445, 476 A.2d 582 (1984) (citation omitted).
Peterson Oil argues that it did not merge with Higganum Oil; it merely purchased all of Higganum Oil's assets. Peterson Oil has appended a copy of the "Asset Purchase Agreement" to its memorandum. Peterson Oil and the plaintiffs agree that generally, "a corporation which purchases all the assets of another company does not become liable for the debts and liabilities of its predecessor. . ." Ricciardello v. J. W. Gant Co., 717 F. Sup. 56, 57-58
CT Page 8191 (D.Conn. 1989); see also Davis v. Hemming, 101 Conn. 713,725, 127 A. 514 (1925). Both sides also recognize that a successor corporation is not liable for the debts and liabilities of its predecessor unless:
 (1) the purchase agreement expressly or impliedly so provides;
 (2) there was a merger or consolidation of the two firms see General Statutes Sec. 33-369 (e);
 (3) the purchaser is a "mere continuation" of the seller; or
 (4) the transaction is entered into fraudulently for the purpose of escaping liability.
Ricciardello v. J.W. Gant Co., supra, 58.
Peterson Oil argues that none of these exceptions apply to the facts of the case at hand. A. Explicit Assumption of Liabilities and Fraud
First, Peterson Oil argues and it is found that the plaintiffs have not alleged either that the Asset Purchase Agreement expressly or impliedly provides that Peterson Oil is liable for the debts and liabilities of Higganum Oil or that the Asset Purchase Agreement was entered into for the purpose of escaping liability. Peterson Oil also notes that the Asset Purchase Agreement explicitly states that Peterson Oil did not assume any of the liabilities of Higganum Oil. (See Peterson Oil's Memorandum, Exhibit A, Asset Purchase Agreement, p. 4.)
B. Merger or Consolidation
Peterson Oil next argues that its purchase of the assets of Higganum Oil does not constitute a merger or consolidation of Peterson Oil with Higganum Oil.
 "A merger or contemplates the `absorption of one corporation by another which retains its name and corporate identity with the added capital, franchise, and powers of a merged corporation'. . . . A consolidation envisions the joining together of the two corporations so that a CT Page 8192 totally new corporation emerges and the two others cease to exist." Ladjevardian [v. Laidlaw-Coggeshall, Inc., 431 F. Sup. 834, 838 (S.D.N Y 1977)], quoting Fletcher, Cyc. Corp. Sec. 704, at 6 (1961 rev. vol.). See Arnold Graphics Indus., Inc. v. Independent Agent Center, Inc., 775 F.2d 38, 42 (2d Cir. 1985).
 "To find that a de facto merger has occurred there must be a continuity of the selling corporation, evidenced by the same management, personnel, assets, and physical location; a continuity of stockholders, accomplished by paying for the acquired corporation with shares of stock; a dissolution of the selling corporation; and the assumption of liabilities by the purchaser."
 Id. at 42, quoting Ladjevardian, 413 F. Supp. at 839. However, the rule has been expanded to impose the assumption of liability based on tort claims. Thus, "a transfer of all its property by one corporation to another, together with the cessation of doing business by the selling company, . . . when (1) there is no tangible consideration given to the selling corporation which could be made available to meet creditors' claims; (2) there is a mixture of officers and stockholders between the two corporations; or (3) the transaction is tainted with fraud," warrants application of the rule. Fletcher, Cyc. Corp., Sec. 7123 (notes omitted). See also id. at n. 4; Kloberdanz v. Joy Mfg. Co., 288 F. Sup. 822 n. 3 (collecting cases) (D.Colo. 1968).
Ricciardello v. J.W. Gant Co., supra, 58.
Peterson Oil has appended to its memorandum the affidavit of William R. Peterson ("Peterson"), the President of Peterson Oil, which indicates that none of the owners, officers, directors or shareholders of Peterson Oil were ever associated with the ownership, operation or assets of Higganum Oil prior to the asset purchase and that none of CT Page 8193 the owners, officers, directors or shareholders of Higganum Oil became owners, officers, directors or shareholders of Peterson Oil after the asset purchase. (Peterson Oil's Memorandum, Exhibit B, Peterson's Affidavit.) Peterson's affidavit also indicates that Peterson Oil paid $530,000.00 for the assets of Higganum Oil. (Peterson Oil's Memorandum, Exhibit B, Peterson's Affidavit.)
The plaintiffs note that Pytlik and Peterson sent a joint letter to the former customers of Higganum Oil stating that Higganum Oil had merged with Peterson Oil. (Peterson Oil's Memorandum, Exhibit C, Letter.) The plaintiffs have appended to their memorandum the deposition testimony of Pytlik and Peterson which indicates that several Higganum Oil employees were retained by Peterson Oil, that Peterson Oil used the name Higganum Oil for a short time after the asset purchase and that Peterson Oil used Higganum Oil's office for about a year after the asset purchase. (Plaintiffs' Memorandum, Exhibit A, Pytlik's Deposition, pp. 21, 23, 25; Exhibit B, Peterson's Deposition, pp. 22-26.)
It is decided that the plaintiffs have failed to controvert the evidence submitted by Peterson Oil which tends to prove that there was no continuity of directors, owners or stockholders of Higganum Oil and Peterson Oil after the asset purchase and that valid consideration was paid by Peterson Oil for the assets of Higganum Oil. Accordingly, as these are essential elements of proving the existence of a merger, it is further found that Peterson Oil has proven that there are no genuine issues of material fact regarding the characterization of the agreement between Peterson Oil and Higganum Oil as a merger or consolidation.
C. Continuation of the Business
"A continuation envisions a common identity of directors, stockholders and the existence of only one corporation at the completion of the transfer. Kloberdanz, supra. What it accomplishes is something in the nature of a corporate reorganization, rather than a mere sale." Ladjevardian v. Laidlaw-Coggeshall, Inc., supra, 839; see also Ricciardello v. J.W. Gant Co., supra, 58. As stated above, Peterson Oil has supplied uncontroverted evidence that there was no continuity of directors, owners or stockholders of Higganum Oil and Peterson Oil after the Asset Purchase Agreement. (Peterson Oil's Memorandum, Exhibit B, Peterson's Affidavit.) Furthermore, because Peterson Oil operated its own heating and oil business for sixty-five years prior to the execution of the Asset Purchase Agreement; (Peterson Oil's Memorandum, Exhibit B, Peterson's Affidavit; Exhibit CT Page 8194 C, Letter; Plaintiff's' Memorandum, Exhibit B, Peterson's Deposition, pp. 27-28.); it is determined that a mere sale of assets took place rather than something in the nature of a corporate reorganization. See Ricciardello v. J.W. Gant 
Co., supra, 58; Greenlee v. Sherman, 142 A.2d 472,536 N.Y.S.2d 877, 880 (A.D. 3 Dept. 1989).[2] Accordingly, it is further found that Peterson Oil has proven that there are no genuine issues of material fact regarding the applicability of the continuation of business exception to the general rule of non-liability of successor corporations.
D. Product-Line Exception
The plaintiff argues that a fifth exception to the general rule of non-liability of successor corporation is found in Fletcher v. Doughboy Recreational, Inc., 7 Conn. Law Trib. No. 6, p. 16 (October 20, 1980, Super. Ct., Corrigan, J.). In Fletcher, the plaintiff alleged that he was injured when he dove in to a swimming pool on June 6, 1976 and that the defendant corporation was in the business of selling swimming pools under the trade name "Doughboy." Id. The defendant moved for summary judgment on the ground that the defendant was not in existence until Doughboy Division of Domain Industries, Inc. was sold to LoMart Perfected Devices, Inc. on August 20, 1974, after the pool and a new liner had been installed. Id. The court denied the defendant's motion:
 It is the court's feeling that Connecticut should follow the modern trend in strict tort liability cases for defective products. Where the successor may hold itself out as being the same by name of product, operation and sale, thereby receiving the benefit of past goodwill, it should likewise bear the burden of past operation. It certainly is in a better position to protect itself and spread the risk for such liabilities which may arise than the innocent consumer who is unaware of the transfer. Ray v. Alad Corporation, 19 Cal.App.3d 34; Wilson v. Fare Well Corp. 140 N.J. Super. 476. Therefore the mere fact of a transfer by sale should not be controlling.
Id.
[T]he application of the "product-line CT Page 8195 exception" requires three factors: (1) the transferee must acquire substantially all of the transferor's assets, leaving no more than a corporate shell remaining; (2) the transferee must hold itself out to the public as a continuation of the transferor, and must do so by producing the same product line under a similar name; and (3) the transferee must benefit from the good will of the transferor.
Fletcher, Cyc. Corp. Sec. 7123.07 (1990 Perm. Rev. Ed.) (footnote omitted).
In the present case, it is undisputed that Peterson Oil bought substantially all of the assets of Higganum Oil. (See Peterson Oil's Memorandum, Exhibit A, Asset Purchase Agreement.) Furthermore, given the content of the letter sent by Pytlik and Peterson to former Higganum Oil customers and the fact that Peterson Oil continued to deliver oil in trucks bearing the Higganum Oil name, it is decided that a question of fact exists regarding whether Peterson Oil held itself out to former Higganum Oil customers as a continuation of Higganum Oil. Additionally, it is further decided that given Peterson's deposition testimony and affidavit and the Asset Purchase Agreement, a question of fact exists regarding whether Peterson Oil has benefited from the good will of Higganum Oil. Accordingly, it is found that Peterson Oil has failed to prove that there are no genuine issues of material fact regarding the applicability of the product-line exception to the general rule of non-liability of successor corporations.
E. Continuing Duty to Warn
The plaintiffs argue that under certain circumstances, a successor corporation may be held liable for the torts of a predecessor corporation under a duty to warn theory. The application of this doctrine depends on allegations of "a continuing relationship between the successor and the predecessor's customers for the benefit of the successor." Fletcher, Cyc. Corp. Sec. 7123.08 (1990 Perm. Rev. Ed.) (footnotes omitted). It is found that this theory of liability is inapplicable in the present case because the plaintiffs have not alleged a continuing relationship between Peterson Oil and former customers of Higganum Oil which would give rise to a continuing duty to warn on the part of Peterson Oil.[3] (See Amended Complaint, #140, para. 3.) CT Page 8196
III. CONCLUSION
For the reasons herein stated, it is concluded that Peterson Oil's motion for summary judgment ought to be and is hereby denied because it has failed to prove that there are no genuine issues of material fact regarding the applicability of the product-line exception to the general rule of non-liability of a successor corporation.
It is so ordered.
ARENA, J.