PEKIN INSURANCE COMPANY *et al.*, Plaintiffs-Appellees, v. JANES AND ADDEMS CHEVROLET, INC., *et al.*, Defendants-Appellants (Janes Chevrolet, Inc., *et al.*, Defendants).—GRE INSURANCE GROUP, d/b/a Midwestern Indemnity Company, Plaintiff-Appellee, v. JANES AND ADDEMS CHEVROLET, INC., Defendant-Appellant.

Fourth District    Nos. 4—93—0765, 4—93—0820 cons.

Argued April 20, 1994.—Opinion filed June 16, 1994.

COOK, J., dissenting.

David B. Mueller, of Cassidy & Mueller, of Peoria, for appellant Myers, Inc.

John L. Morel (argued), of Bloomington, for appellant Janes and Addems Chevrolet, Inc.

D. Kendall Griffith (argued), Brian P. Thielen, and Kristin E. Hutson, all of Hinshaw & Culbertson, of Chicago, for appellee Pekin Insurance Company.

Julie A. Ward (argued) and Robert H. Jennetten, both of Quinn, Johnston, Henderson & Pretorius, Chartered, of Peoria, for appellee American States Insurance Company.

Donald V. Jernberg (argued) and M. Thaddeus Murphy, both of Oppenheimer, Wolff & Donnelly, of Chicago, for appellee GRE Insurance Group.

Richard E. Stites and Thomas B. Borton, both of Livingston, Barger, Brandt & Schroeder, of Bloomington, for Byron Tucci and Pamela Tucci.

JUSTICE KNECHT delivered the opinion of the court:

These are the consolidated appeals of parties making claims under four insurance policies issued by three insurance companies: GRE Insurance Group (GRE) (No. 4—93—0820), and American States Insurance Company (American States) and Pekin Insurance Company (Pekin) (No. 4—93—0765). The companies filed declaratory judgment complaints seeking determination of coverage and the duty to defend their insured Janes & Addems Chevrolet, Inc. (Janes & Addems). On March 28, 1990, a fire destroyed a warehouse owned by Myers, Inc. (Myers), which was on property adjacent to Janes & Addems' property. The policies in question expired in January 1984, January 1987, and February 23, 1990. At the time of the fire no policy relevant to this appeal was in effect. Myers, in a suit against insured Janes & Addems (McLean County case No. 90—L—194), alleged the fire started on the property formerly owned by Janes & Addems and, as a result of previously dumped petroleum products, moved onto Myers' property, damaging it. Plaintiffs sought summary judgment, claiming there was no coverage as the loss occurred after the policies expired. These motions were granted. Janes & Addems appeals in No. 4—93—0820, and both Janes & Addems and Myers appeal in No. 4—93—0765. We affirm.

## I. BACKGROUND

This dispute arises out of a March 28, 1990, fire and explosion which destroyed a warehouse of Myers and chemicals and fertilizer stored in it. In addition to the loss of building and inventory, Myers was forced to expend large sums of money to clean up contaminated water and soil. This soil and water contamination resulted from the spraying of water onto the warehouse to extinguish the fire. Myers filed suit in No. 90—L—194 against the present owners of an adjacent automobile dealership, Janes Chevrolet (Janes), to recover damages caused by the fire. Myers alleged the present owners allowed petroleum products to accumulate on the ground behind the dealership's garage. Myers further alleged Janes' employees negligently burned garbage, which ignited the accumulated petroleum. As a result of accumulated petroleum and petroleum which had saturated the ground and escaped to Myers' property, the fire spread to and destroyed Myers' warehouse.

In April 1991, Myers, in an amendment to its amended complaint, included claims against Janes & Addems, the former owners

and operators of the auto dealership. In this amendment, Myers alleged Janes & Addems allowed petroleum products to accumulate on the property and these products and chemicals accreted on the surface as well as infiltrating the underlying soil. The chemicals then spread and percolated to and across the boundary between the properties.

Specifically Myers alleged Janes & Addems:

"(a) Fail[ed] to remove stored petroleum products, chemicals and flammable substances which were located upon the ground adjacent to the MYERS property;

(b) Fail[ed] to abate the apparent hazard existing from the accumulation of petroleum products, chemicals and flammable substances upon the ground adjacent to the MYERS property; [and]

(c) Permit[ed] the continued presence of flammable pollutants and chemicals which created a hazard to the health and safety of those in the area and impairing the use of their property."

As a result of these acts of negligence, Myers alleged Janes & Addems was liable for damages caused by the fire because the chemicals it allowed to accumulate allowed the fire to spread from Janes to Myers' warehouse. Myers also alleged Janes & Addems created a nuisance by allowing the petroleum products and other chemicals to accumulate. This caused the fire to cross the border between the properties and destroy Myers' warehouse. After the filing of the amendment to the amended complaint, American States retained counsel for Janes & Addems under a reservation of rights.

On August 7, 1991, Pekin, previous insurer of Janes & Addems, filed a declaratory judgment action (case No. 91—MR—113) against Myers and all those named in Myers' suit who may make a claim against Pekin. Pekin had issued two insurance policies to Janes & Addems. The first policy, effective January 1, 1989, through January 1, 1990, was a garage liability policy. This policy provided:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

\*\*\*

\*\*\* [P]roperty [D]amage."

"Property damage" is defined in the policy as: "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom."

The second policy issued by Pekin was effective January 1, 1990, through February 23, 1990, expiring before the fire in question occurred. It was a commercial lines policy covering property damage

which occurred "[d]uring the policy period shown in the [d]eclarations." Pekin claimed that the damage for which Myers sought relief did not occur within the policy period of either policy and therefore sought a declaration there was neither coverage nor a duty to defend.

Also in August 1992, American States filed a declaratory judgment action, case No. 92—MR—113, against the same parties as Pekin. The American States policy was effective January 1, 1986, through January 1, 1987, and contained the same definitions as the first Pekin policy. American States also claimed the damage complained of occurred outside the policy period; therefore, there was no coverage and no duty to defend. In October 1992, GRE filed a declaratory judgment action, case No. 92—L—256, against Janes & Addems. GRE's policy contained the same language as the first Pekin policy and the American States policy. In September 1992, a motion was made to consolidate the causes filed by Pekin and American States. This motion was granted and the cases were consolidated by the circuit court.

The insurance companies filed motions for summary judgments. Each company argued the damages complained of, those resulting from the fire, did not occur during the policy period, therefore they did not owe a duty to indemnify or defend Janes & Addems. Prior to hearings on the motions, Myers voluntarily dismissed the underlying complaint in case No. 90—L—194, against all the parties. This was done to defer any further expense until the question of coverage was decided. The circuit court granted plaintiffs' motions for summary judgment finding that the property damage did not occur during the policy periods. These consolidated appeals followed.

## II. COVERAGE UNDER THE POLICIES

Defendants contest the grant of summary judgments in favor of plaintiff insurers. Summary judgment is properly granted when the pleadings, depositions, and the affidavits show no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. (735 ILCS 5/2—1005(c) (West 1992); *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.) On review, this court determines *de novo* if the trial court correctly decided no genuine issue of material fact exists. (*Wright v. St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis* (1992), 229 Ill. App. 3d 680, 683, 593 N.E.2d 1070, 1072.) In this case there are no genuine issues as to any material fact. The only issue is the interpretation of the insurance policies. The construction of insurance policies is a question of law, the determination of which rests exclusively with the court. *Zurich Insurance Co. v. Raymark Industries, Inc.* (1987), 118 Ill. 2d 23, 58, 514 N.E.2d 150, 166.

We must look at the allegations of the underlying complaint to determine if there is coverage for this loss. (*Zurich*, 118 Ill. 2d at 52, 514 N.E.2d at 163.) Since the underlying complaint has been voluntarily dismissed, it is proper to look at the allegations in the dismissed complaint to determine coverage. If the facts alleged in that complaint fall within, or potentially within, the policy's coverage provisions, the insurer has a duty to defend the insured in the underlying action. *Crum & Forster Managers Corp. v. Resolution Trust Corp.* (1993), 156 Ill. 2d 384, 393, 620 N.E.2d 1073, 1079.

An insurer has a right to limit policy coverage in plain, understandable language. The insurer is always at liberty to limit the character and extent of the risk it undertakes to assume. This includes limiting the period of *time* within which the damage must occur. (*Schrillo Co. v. Hartford Accident & Indemnity Co.* (1986), 181 Cal. App. 3d 766, 771, 226 Cal. Rptr. 717, 719.) In this case the companies limited coverage to sums the insured becomes obligated to pay as damages because of property damage. "Property damage" is limited to "[p]hysical injury to or destruction of tangible property *which occurs during the policy period.*" (Emphasis added.)

Defendants argue this insuring language places a duty on plaintiffs to defend and indemnify Janes & Addems. This duty exists because the accumulation and seepage of chemicals *during* the policy periods caused damage to Myers' property. This property damage "triggered" coverage; therefore, coverage extends to *all* property damage caused by the accumulation of the chemicals regardless of whether it occurred during the policy period.

Defendants contend under *Zurich* coverage is provided. *Zurich* involved a declaratory judgment action brought against asbestos manufacturers to determine coverage for asbestos-related injuries. *Zurich* found coverage was provided because the claimants were injured during the policy period. This injury, according to the court, occurred when asbestos fibers are inhaled and retained in the lungs. The injury occurs at or shortly after the time a claimant is exposed to the asbestos. Therefore, the insurers which had policies in effect at the time a claimant was exposed to asbestos must provide coverage for that claim. *Zurich*, 118 Ill. 2d at 45, 47, 514 N.E.2d at 160, 161.

Defendants also argue under *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1991), 144 Ill. 2d 64, 578 N.E.2d 926, once there is property damage and coverage is triggered, there is coverage for all related damage regardless of when it occurs. In *United States Fidelity*, the underlying suit was for the recovery of costs incurred in an asbestos-abatement program. Several school districts and public housing owners filed suit against the companies

which installed the asbestos insulation. The court found asbestos fiber contamination constituted a physical injury to tangible property, which triggered coverage. Since the underlying complaints alleged the buildings were contaminated with asbestos fibers during the policy period, they alleged potentially covered property damage. *United States Fidelity*, 144 Ill. 2d at 76, 578 N.E.2d at 931-32.

Based on the policy language here, defendants claim this case is similar to the cases above. It was alleged Janes & Addems allowed the continuous and ongoing invasion of Myers' property with petroleum products, and this caused damage to Myers' property. This accumulation caused the later fire to be transferred from Janes & Addems' property to Myers' property. Myers alleged property damage was caused during the policy period, and this damage caused the fire after the policy expired. Therefore, coverage should be provided for all the property damage related to the damage which occurred while each policy was in force.

Plaintiffs respond the policies clearly cover liability for damages resulting from property damage which occurs "during the policy period." While there may have been property damage to Myers' property as a result of the accumulated petroleum products, Myers does not seek recovery for this property damage. Instead, Myers is seeking damages as a result of the fire which occurred *after* expiration of all these policies.

Plaintiffs argue under *Zurich* coverage under a general liability policy is triggered, not when the wrongful conduct takes place, but when the complained-of damage occurs. (See also *Great American Insurance Co. v. Tinley Park Recreation Comm'n* (1970), 124 Ill. App. 2d 19, 259 N.E.2d 867.) This is contrasted with the protection provided by an "occurrence" or "acts and omissions" policy, which provides coverage for the negligent acts or omissions which occur during the policy period, regardless of when the injury occurs or the claim is made. (*Continental Casualty Co. v. Maxwell* (Mo. 1990), 799 S.W.2d 882, 886; *United States v. A.C. Strip* (6th Cir. 1989), 868 F.2d 181, 184.) In this case, the insured was covered under a general liability policy and coverage is triggered when the injury occurs.

In *Tinley Park*, insurance was purchased for a fireworks display. This policy of insurance was in effect for five days, expiring at 12:01 a.m. September 4, 1962, a day after the fireworks display. When cleaning up after the display, workers failed to collect two unexploded bombs. These bombs were found by two boys on the afternoon of September 4. One of these bombs exploded September 5, injuring a child. The court found the "accident," and resultant injury, occurred after the expiration of the policy, even though the "negligent act"

leading to the bombs being left in the park may have occurred during the policy period. The court noted an accident cannot be said to have occurred until all of the factors of which it is comprised combine to produce the force which inflicts the injury. (*Tinley Park*, 124 Ill. App. 3d at 23, 259 N.E.2d at 869.) Plaintiffs argue the same is true in this case. The accident, and the complained-of property damage, occurred after the policy periods ended. This is not a case where the damage or injury was continuing or may have occurred during a policy period, as was *Zurich*. In this case all of the damage *for which recovery was sought* occurred because of the fire and after the policies expired. All of the factors necessary to cause this harm did not combine until the introduction of the fire. Therefore, there is no coverage and no duty to defend.

In the cases defendants rely on, the damage for which recovery was sought occurred during the policy period. For example, in *Zurich* the claimants were seeking recovery for injuries related to the inhalation of asbestos. The court found there were injuries caused by the inhalation of asbestos during the policy period. In *United States Fidelity*, the claimants were seeking recovery for money spent in required asbestos removal. The court found the contamination of the buildings with asbestos fiber was physical injury to the property and it occurred during the policy period.

In *Greenlee v. Sherman* (1989), 142 A.D.2d 472, 536 N.Y.S.2d 877, the claimant presented similar arguments to those presented here. In *Greenlee*, the claimant's house was destroyed by fire. The claimant filed suit against the installer of a furnace, alleging the fire was the result of the negligent installation of the furnace. As a result of this installation, a wooden joist sustained some injury during the policy period. The fire which destroyed the home did not happen until after the policy period expired. Claimant argued since there was some injury to the joist due to the heat of the furnace, Hanover, the installer's insurance company, should be liable for any and all subsequent related physical injury to the property, and there should be coverage irrespective of whether the later injury occurred during the policy period. The court found there was no coverage for the later fire. Claimant was not seeking recovery for the damage which occurred during the policy period, he was seeking recovery for damage because of the later fire, which occurred after the policy expired. *Greenlee*, 142 A.D.2d at 478, 536 N.Y.S.2d at 881.

In this case, Myers is seeking recovery, not for the presence of the petroleum products or for the removal of the chemicals, but for damage resulting from the fire. The only damage alleged to have occurred during the policy period is the accretion and percolation of

petroleum products onto Myers' property. The expenses Myers claims as damages for cleaning pollutants from the property resulted from water being sprayed on chemicals stored in the building, not from the presence of the petroleum. Myers is seeking recovery for property damage caused by a fire which occurred *after* the policies in issue had expired. This property damage did not occur during the policy period, so there is no duty to provide coverage for these damages. If there were a duty to cover damages such as these, there would be a never-ending duty to provide coverage. Insurers would be called upon to indemnify a former insured for a fire or other damage which may occur years or decades after a policy had expired.

Defendants argue the insuring language of the policies is ambiguous and therefore must be construed against the insurers as drafters of the policies. Defendants state limiting insured "damages" to the coverage for "property damage" which occurs during the policy period "neglects the fact that *coverage is provided for the insured's conduct during the policy period* which may give rise to legal obligations for damages which occur thereafter." (Emphasis in original.)

This court is obliged to construe an insurance policy so as to carry out the true intent of the parties. (*de los Reyes v. Travelers Insurance Cos.* (1990), 135 Ill. 2d 353, 358, 553 N.E.2d 301, 304.) The parties' intent must be gleaned from the language of the contract as a whole (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 493, 475 N.E.2d 872, 876), and this court may not search to find ambiguity where it is not present. *United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 5, 429 N.E.2d 1203, 1205.

Each of these policies clearly and unambiguously provided coverage for liability resulting from property damage which occurred during the policy period. If an insurance policy is not genuinely ambiguous, it should be interpreted and enforced as it appears. (*Qualls v. Country Mutual Insurance Co.* (1984), 123 Ill. App. 3d 831, 834, 462 N.E.2d 1288, 1291.) These policies were not ambiguous and provided coverage for all sums which the insured shall become "legally obligated to pay as damages" because of "property damage." "Property damage" is defined as physical injury to or destruction which occurs during the policy period. These policies are not ambiguous. They only provided coverage for losses due to property damage occurring during the policy period. They did not provide coverage for damages arising from the March 28, 1990, fire which occurred after the policies expired.

## III. CONCLUSION

Insurers are sometimes criticized for policy language that is ambiguous. This is not a case of ambiguity or insureds being deprived of coverage they paid premiums for by the use of semantic gymnastics. Janes & Addems was free to purchase insurance that would protect it against certain risks. The insurers were entitled to practice economic risk management by having different policies of insurance and limiting the kind of coverage available under each policy. Janes & Addems did not secure an acts and omissions policy. The plaintiffs have no duty to defend and there is no coverage. The summary judgments granted in favor of plaintiffs are affirmed.

Affirmed.

LUND, J., concurs.

JUSTICE COOK, dissenting:
I respectfully dissent.

There is no dispute as to the facts. Myers owned a warehouse in which it stored agricultural chemicals and fertilizer. Next to the Myers property was a car dealership. While Janes & Addems owned the dealership, petroleum products were allowed to accumulate on the property; those products spread to the Myers property, both above and below the surface. After new owners purchased the dealership on January 2, 1990, the accumulation and spreading continued. On March 28, 1990, dealership employees burned some garbage on the dealership property. Because of the accumulated petroleum above and below the ground, the fire spread to the Myers warehouse and destroyed it.

Plaintiffs in this declaratory judgment action are insurance companies which had issued liability policies to the dealership. Those policies had all expired prior to the fire on March 28, 1990. The accumulation and spreading of petroleum products occurred, however, within the period of each policy. The majority opinion recognizes the Myers property sustained damage at the time it was contaminated with petroleum products. The majority opinion denies coverage, however, because "Myers is seeking recovery, not for the presence of the petroleum products or for the removal of the chemicals, but for damage resulting from the fire." 263 Ill. App. 3d at 405.

Insurers made the same argument in *Zurich*, another case involving liability policies, but involving liability for bodily injury instead of property damage. In *Zurich*, workers had inhaled asbestos during the policy period, and microscopic changes ("injuries") had

quickly occurred in their lungs, but asbestosis, mesothelioma, or bronchogenic carcinoma did not occur during the policy period. (*Zurich*, 118 Ill. 2d at 44-45, 514 N.E.2d at 159-60 ("[A]n asbestos-related disease occurs when it progresses to the point at which it significantly impairs the lungs' function").) The insurers argued plaintiffs did not seek damages for microscopic or cellular "injury" but for the asbestos-related diseases, and accordingly there should be no coverage as those diseases had not occurred during the policy period. The supreme court rejected the argument, holding (1) the policies required the insurers to provide coverage of asbestos-related claims if the claimant suffered bodily injury during the policy period, and (2) "bodily injury" took place at or shortly after the time of exposure to asbestos. *Zurich*, 118 Ill. 2d at 47, 514 N.E.2d at 161.

Defendants also cite *United States Fidelity* (144 Ill. 2d 64, 578 N.E.2d 926), but the facts there are different from *Zurich*. In *United States Fidelity* the asbestos fiber contamination which began when the fireproofing was sprayed on was the same contamination for which recovery was eventually sought. See also *Board of Education v. A,C&S, Inc.* (1989), 131 Ill. 2d 428, 446-49, 546 N.E.2d 580, 588-90 (buildings "damaged" when contamination reaches point where corrective action must be taken).

The elements of a negligence cause of action are (1) a duty of care, (2) a breach of that duty, and (3) an injury proximately caused by the breach. (*Curatola v. Village of Niles* (1993), 154 Ill. 2d 201, 207, 608 N.E.2d 882, 885.) A breach of duty is not enough for a cause of action—there must be injury as well. Most liability policies similarly limit coverage to occurrences within the policy period by their definition of "bodily injury" or "property damage." For example, the American States policy provides: " '[P]roperty damage' means (1) physical injury to or destruction of tangible property which occurs during the policy period ***." As the majority points out, in *Tinley Park* there were "negligent acts" during the policy period, but those acts did not result in bodily injury during the policy period. The *Tinley Park* court properly found no coverage.

Defendants here do not argue, however, that coverage may be based on mere acts which would eventually lead to property damage. There were "negligent acts" here, but there was also property damage. The key question in this case is whether the existence of some property damage during the policy period is sufficient to trigger coverage for other, related, property damage which occurs after the policy period. *Zurich* answers that question in the affirmative. *Zurich* may be criticized because it exposes insurers to unpredictable claims long after their policies were thought to have expired. Such exposure

is warranted, however, by the policy language. The American States policy provides that the company will pay "all sums which the insured shall become legally obligated to pay as damages" because of property damage "to which this insurance applies, caused by an occurrence." If a claimant is injured when he is struck by a falling wall, his condition may worsen for many months before his eventual death, and unforeseen complications may develop. Yet the insurer which provides coverage at the time of the injury is liable for all resulting damages, even those outside the policy period. It is only necessary that injury occur during the policy period, not that all the damages for which recovery is sought accrue.

In *Zurich* the damages eventually sought were related to the injury which occurred when the asbestos was inhaled. Such a relationship is also present in this case, where it is alleged that the damage during the policy period was later a cause of the fire at the Myers warehouse. If the damage were not a cause, for example if the contamination were by nonflammable products, there should be no coverage. It could be argued that the damages for which recovery is eventually sought must be the inevitable result of the property damage during the policy period. *Zurich* does not impose such a limitation, however. There is no indication in *Zurich* that there would be coverage for exposure to asbestos only if that exposure would inevitably lead to asbestosis.

The majority argues that a finding of coverage in this case would impose a never-ending duty upon insurers. That is not correct. An insurer's duty ends when the policy period ends unless there has been property damage, physical injury to tangible property, during that time. This is an unusual case and it may be that the justification for coverage is not as strong here as it is in other cases. It is a mistake, however, to abandon the *Zurich* analysis without a principled basis for doing so.