[No. A076840. First Dist., Div. Two. Feb. 27, 1998.]

THERESE PETRINI et al., Plaintiffs and Appellants, v.
MOHASCO CORPORATION, Defendant and Respondent.

COUNSEL

Brayton, Harley, Curtis, Philip A. Harley, James L. Oberman and Timothy J. Walton for Plaintiffs and Appellants.

Haight, Brown & Bonesteel, Roy G. Weatherup, Lisa L. Oberg, Jon M. Kasimov, Caroline E. Chan and T. Sky Woodward for Defendant and Respondent.

**OPINION**

**LAMBDEN, J.**—Therese Petrini appeals from the summary judgment granted in favor of defendant Mohasco Corporation. She contends the trial court erred in concluding that no triable issue of fact exists to establish that defendant Mohasco Corporation (Mohasco) is a successor in interest to William Volker & Company (Volker). We agree and reverse the judgment.

FACTS

Plaintiffs are the widow and children of decedent John Petrini. In a first amended complaint filed on August 1, 1994, they sued Mohasco and some 225 named defendants for damages for decedent's death in 1993 allegedly caused by mesothelioma, resulting from exposure to asbestos in floor tiles.

Plaintiffs allege that Mohasco is liable as the successor in interest of Volker, which supplied some of the floor tiles and linoleum products containing asbestos. Mohasco filed an answer admitting it had acquired the capital stock of Volker, a Nevada corporation, in January 1970 and that Volker was its wholly owned subsidiary until December 1985. Mohasco denied it is Volker's successor in interest for purposes of the allegations made in the complaint and denied any direct liability.

Mohasco moved for summary judgment on the ground that it is not liable as Volker's successor in interest as a matter of law under *Potlatch Corp.* v. *Superior Court* (1984) 154 Cal.App.3d 1144 [201 Cal.Rptr. 750]. Its motion set forth the following facts: Mohasco is a New York corporation in the business of manufacturing and distributing carpeting and furniture. Volker was a Nevada corporation in the business of selling resilient floor coverings, carpeting, furniture, and window coverings. In January 1970, Mohasco became the sole shareholder of Volker through a stock exchange. Mohasco did not operate Volker's business; Volker continued to operate independently as a wholly owned subsidiary. In June 1980, Mohasco decided to liquidate Volker. Beginning in January 1981, Volker transferred its resilient floor products business to companies unaffiliated with Mohasco. No part of this business was acquired by Mohasco or any subsidiary of Mohasco. Volker sold its carpeting business to Mohasco Carpet Corporation, a subsidiary of Mohasco. Carpeting products are not implicated as a cause of decedent's illness. By November 1985, Volker's only remaining assets were real property in Texas, Montana, and Oregon, which were sold to Mohasco Carpet Corporation at book value. In December 1985, Volker was merged into Mohasco. Volker had no assets at the time of the merger. Volker's only existing liabilities involved a lease in Kansas and a pension.

A certificate of merger, filed in Nevada on December 27, 1985, stated that Mohasco "shall merge into itself its subsidiary, William Volker & Company, and assume all of said subsidiary's liabilities and obligations . . . ." A certificate of merger was also filed in New York under section 905 of the Business Corporations Law of the State of New York.

## DISCUSSION

■ Appellant contends the trial court erred in granting summary judgment for Mohasco on the ground that there is no triable issue of fact to establish that Mohasco is a successor in interest to Volker. ■ Summary judgment is granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We review the trial court's decision to grant summary judgment for Mohasco de novo. (*Hunter* v. *Pacific Mechanical Corp.* (1995) 37 Cal.App.4th 1282, 1285 [44 Cal.Rptr.2d 335].)

■ Appellant contends that Mohasco is liable for Volker's obligations by virtue of the merger. According to appellant, this is true under the statutes of New York, Nevada and California. Appellant maintains that the act of merging, even though Volker had no assets by that time, serves to take the case outside of *Potlatch Corp.* v. *Superior Court, supra,* 154 Cal.App.3d 1144, upon which the trial court relied. We agree.

The present situation is governed by principles of law that were settled long before the decision in *Potlatch* or in *Ray* v. *Alad Corp.* (1977) 19 Cal.3d 22 [136 Cal.Rptr. 574, 560 P.2d 3], the case which *Potlatch* distinguished. *Ray* v. *Alad Corp.* established a new basis of successor liability based upon the policies underlying strict tort liability for defective products. (*Id.* at p. 30.) It did so because liability could not be found under the traditional bases for imposing liability on a successor corporation. ■ In the present case, by contrast, successor liability may be found under the pre-*Ray* v. *Alad Corp.* rule that was applied to determine whether a corporation purchasing the principal assets of another corporation assumes the other's liabilities: "As typically formulated the rule states that the purchaser does not assume the seller's liabilities unless (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." (*Id.* at p. 28; see also 15 Fletcher, Cyclopedia of the Law of Private Corporations (1990 rev.) §§ 7122, 7123.05, p. 266; Annot., Products Liability: Liability of Successor Corporation for Injury or Damage Caused by Product Issued by Predecessor (1975) 66 A.L.R.3d 824, 827-828.)

None of the four stated grounds for imposing liability were present in *Ray* v. *Alad Corp., supra,* 19 Cal.3d 22, but the facts nevertheless called for a finding of liability. Accordingly, the court established a new basis for liability that has since been referred to as the product-line theory, which imposes successor liability for damages resulting from defective products when a party acquires a manufacturing business and continues the output of its line of products with no outward indication of a change in ownership and the selling company has gone out of business. (19 Cal.3d at p. 34.)

In *Ray* v. *Alad Corp.,* the plaintiff was injured when he fell from a defective ladder. He brought suit against Alad Corporation (Alad II), which neither manufactured nor sold the ladder but which prior to the plaintiff's injury succeeded to the business of the manufacturer of the ladder, which was also named Alad Corporation (Alad I). Alad II had succeeded to the business of Alad I by purchasing substantially all of Alad I's assets—its plant, equipment, inventory, trade name, and goodwill. (19 Cal.3d at pp. 24-26.) Alad II continued to manufacture the same line of ladders under the Alad name, using the same equipment, designs and personnel, and soliciting customers with no outward sign of any change of ownership. (*Id.* at pp. 27-28.) The agreement of purchase and sale required Alad I to dissolve its corporate existence as soon as practical. (*Id.* at p. 26.) Under the circumstances presented, the court decided that the policies underlying strict tort liability called for a special exception to the rule that would otherwise insulate the present defendant from the plaintiff's claim. (*Id.* at p. 30.)

In *Potlatch Corp.* v. *Superior Court, supra,* 154 Cal.App.3d 1144, Royal Insurance Company sought to hold Potlatch Corporation liable for damages allegedly caused by a defective roof beam manufactured by the Summer Bell division of Potlatch's former wholly owned subsidiary, Speedspace Corporation. Potlatch acquired Speedspace in September 1967 by exchanging Potlatch shares for 100 percent of Speedspace's stock. Speedspace, including its Summer Bell division, became a wholly owned subsidiary of Potlatch. Summer Bell ceased operations in March 1969, but Speedspace continued in existence until December 31, 1978, when it was dissolved. Its business was discontinued, and its plant and equipment were liquidated by an auction sale. Potlatch did not take over the business of Speedspace or its plant and equipment. (*Id.* at pp. 1147-1148.)

Both Royal and Potlatch moved for summary judgment on the question of Potlatch's liability as the successor in interest to Speedspace. The trial court granted summary judgment for Royal based upon the holding in *Ray* v. *Alad Corp., supra,* 19 Cal.3d 22. The Court of Appeal reversed, finding *Ray* v. *Alad Corp.* distinguishable because Potlatch did not acquire the physical

assets of Speedspace and its Summer Bell division, nor did it operate the Summer Bell business as part of its own business. Instead, Potlatch acquired only the capital stock of Speedspace and became its sole shareholder. Speedspace continued to carry on its business for 11 years. The assets of Speedspace remained exactly the same after Potlatch "acquired" it as before, and its assets remained available to answer for damages resulting from injuries caused by defective products previously manufactured by it and its Summer Bell division. When Speedspace was dissolved, Potlatch did not acquire its plant and equipment or continue its business. By virtue of the dissolution under California law, Potlatch ultimately received the net value of Speedspace's assets, but it did so as the sole shareholder of Speedspace. (*Potlatch* v. *Superior Court, supra,* 154 Cal.App.3d at pp. 1150-1151.) "When a corporation has been duly and lawfully dissolved, its shareholders are not liable for debts of the corporation (see *Ray* v. *Alad Corp., supra,* 19 Cal.3d at p. 32 and authorities cited), nor is the rule changed on account of the fact that the shareholder happens to be another corporation, that is, that the dissolved corporation was a wholly owned subsidiary of another corporation." (*Potlatch Corp.* v. *Superior Court, supra,* 154 Cal.App.3d at p. 1151.)

*Potlatch* is, of course, distinguishable from the present case because Volker was merged into Mohasco. Under both New York and Nevada law, the surviving corporation assumes the liability of the merged corporation. The New York statute provides: "The surviving or consolidated corporation shall assume and be liable for all the liabilities, obligations and penalties of each of the constituent corporations. . . ." (N.Y. Bus. Corp. Law § 906, subd. (b)(3).) The Nevada statute provided: "The surviving corporation has all of the liabilities of each corporation that is a party to the merger." (Former Nev. Rev. Stat. § 78.459, subd. (1)(c).) California law also provides that the surviving corporation shall be subject to all the debts and liabilities of the disappearing corporation, but the statute limits its scope to mergers "pursuant to this chapter." (Corp. Code, § 1107, subd. (a).) The parties have referred to the law in New York, Nevada and California and have taken no position on which law governs this case, aside from observing that the California statute would not apply to this out-of-state merger between two foreign corporations. We need not decide which law governs because they are all the same in recognizing corporate merger as a basis for imposing liability for torts of a predecessor corporation upon the surviving corporation. (15 Fletcher, Cyclopedia of the Law of Private Corporations, *supra,* § 7123.05, p. 266; *Schumacher* v. *Richards Shear Co., Inc.* (1983) 59 N.Y.2d 239 [464 N.Y.S.2d 437, 451 N.E.2d 195, 198]; *Gratz* v. *Allied Products Corp.* (1991) 171 A.D.2d 611 [567 N.Y.S.2d 681, 682].) Indeed, the New York Court of Appeals has recited the same rule that was stated in *Ray* v. *Alad Corp.*: "A corporation may be held liable for the torts of its predecessor

if (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations." (*Schumacher* v. *Richards Shear Co., Inc., supra*, 451 N.E.2d at p. 198.)

Mohasco argues that liability based upon the merger would be inappropriate because it did not acquire any business or other asset of Volker as a result of the merger. Volker was a shell and had no assets. At the bottom line, Mohasco asserts, it was in essentially the same position after the merger as it was before the merger. Mohasco argues that none of the statutes helps appellant because none has been applied where, as here, the disappearing corporation brings no assets to the merger and the business of the disappearing corporation is not continued by the surviving corporation in any way.

Mohasco maintains that courts do not impose successor liability blindly, without regard to the circumstances of the merger, and have refused to impose successor liability where it would be fundamentally unfair under the circumstances, citing *Rawlings* v. *D. M. Oliver, Inc.* (1979) 97 Cal.App.3d 890, 900-901 [159 Cal.Rptr. 119] and *Lundell* v. *Sidney Machine Tool Co.* (1987) 190 Cal.App.3d 1546, 1555-1556 [236 Cal.Rptr. 70]. Mohasco asserts New York cases are in accord, citing *Grant-Howard Associates* v. *General Housewares* (1984) 63 N.Y.2d 291 [482 N.Y.S.2d 225, 472 N.E.2d 1]; *Mitchell* v. *Suburban Propane Gas Corp.* (1992) 182 A.D.2d 934 [581 N.Y.S.2d 927]; and *Greenlee* v. *Sherman* (1989) 142 A.D.2d 472 [536 N.Y.S.2d 877].

Appellant responds that none of these cases is on point. She is correct. *Greenlee* v. *Sherman, supra*, 536 N.Y.S.2d 877, involved an unsuccessful attempt to hold the purchaser of a heating service company liable for the negligence of the earlier owner in installing the flue pipe from a furnace. The court found no evidence that there was a consolidation or merger of the companies or that the purchasing company was a mere continuation of the seller's business. The court noted that the mere continuation theory was inapplicable because it refers to corporate reorganization. (*Id.* at pp. 879-880.)

In *Mitchell* v. *Suburban Propane Gas Corp., supra*, 581 N.Y.S.2d 927, the defendant was found to have no liability as a successor corporation either in negligence or in strict products liability under the two asserted exceptions to the general rule that a corporation that acquires the assets of another cannot be held liable for the torts of its predecessor: (1) merger or consolidation of seller and purchaser; (2) the purchasing corporation was a mere continuation

of the selling corporation. The court held the transaction was not a statutory or de facto merger. Nor was the purchasing corporation found to be a mere continuation of the selling corporation because the mere continuation exception refers to corporate reorganization, which did not occur. (*Id.* at pp. 928-929.)

*Grant-Howard Associates* v. *General Housewares, supra,* 482 N.Y.S.2d 225 [472 N.E.2d 1] involved the interpretation of a contract regarding assumption of existing liabilities pursuant to a reorganization agreement in which the defendant General Housewares Corporation purchased substantially all of Holt Howard's corporate assets. The shareholders of Holt Howard sought a declaration that they were entitled to indemnity under the agreement for any funds expended defending a lawsuit for damages for injuries suffered by an individual from using a product sold by Holt Howard. The court held that the question of indemnification was to be determined by reference to the contract, which provided for assumption of "existing" liabilities and thus did not include an injury that occurred five years later. (*Id.* at pp. 226-227 [472 N.E.2d at pp. 2-3].)

In *Rawlings* v. *D. M. Oliver, Inc., supra,* 97 Cal.App.3d 890, the court, in fact, held that successor liability could be imposed under the *Ray* v. *Alad Corp.* strict liability theory. (See also *Kaminski* v. *Western MacArthur Co.* (1985) 175 Cal.App.3d 445 [220 Cal.Rptr. 895] [successor liability upheld under *Ray* v. *Alad Corp.* strict liability theory.]) Successor liability was rejected in *Lundell* v. *Sidney Machine Tool Co., supra,* 190 Cal.App.3d 1546, on the ground that the circumstances were not comparable to those set forth in *Ray* v. *Alad Corp.* (See also *Phillips* v. *Cooper Laboratories* (1989) 215 Cal.App.3d 1648 [264 Cal.Rptr. 311] [successor liability rejected on grounds that second corporation had not agreed to assume unknown liabilities at the time of dissolution of first corporation and second corporation's acquisition had not caused the destruction of plaintiff's remedy].)

The authorities cited by Mohasco do not support its claim that liability based upon the merger would be inappropriate. Indeed, there is authority to the contrary. (*Marks* v. *Minnesota Mining & Manufacturing Co.* (1986) 187 Cal.App.3d 1429, 1435 [232 Cal.Rptr. 594] [successor liability found based on de facto merger]; *Moe* v. *Transamerica Title Ins. Co.* (1971) 21 Cal.App.3d 289, 304 [98 Cal.Rptr. 547] ["It is the general rule that a corporation formed by consolidation or merger is answerable for the debts and liabilities of the constituent corporations, whether they arise ex contractu or ex delicto."].) The surviving corporation under a statutory merger is responsible for the liabilities of the merged corporation under both common law and statute. No authority has been cited or found indicating that such

liabilities would be limited only to known ones. Thus, we conclude that Mohasco is liable as a successor in interest to Volker by virtue of its merger of Volker into itself.

## DISPOSITION

The judgment is reversed.

Kline, P. J., and Ruvolo, J., concurred.