TUCHER, J.
*190 In 2004, Janine Hernandez was a passenger in a 1992 Oldsmobile Cutlass that was involved in a head-on collision with another car. Hernandez, who was 11 years old at the time, was seriously injured. In 2012, she filed this action against Enterprise Rent-A-Car and its affiliates (Enterprise) to recover damages resulting from the car accident, alleging a single cause of action for strict products liability. In 2017, the trial court granted Enterprise summary judgment. Because Enterprise did not succeed to whatever liability for this accident a different car rental company might have had, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
Hernandez contends the 1992 Oldsmobile Cutlass involved in her 2004 accident was defective because it was not designed to be crashworthy. Specifically, she alleges that the Oldsmobile did not provide adequate protection to children riding in the back seat when the vehicle was involved in a frontal collision. Hernandez does not here attempt to hold the product manufacturer liable for this alleged defect. Instead, she contends that a rental car company called National Car Rental Systems *470 (NCRS) would have been strictly liable for her damages because NCRS placed the Oldsmobile "into the stream of commerce," and that Enterprise is strictly liable as a successor in interest of NCRS. *191 Although Hernandez filed this action in 2012, the case was stayed for several years while she litigated an identical legal claim against other alleged affiliates of NCRS in San Joaquin County. Following a defense judgment in the San Joaquin County case, Hernandez amended her pleading in this case, filing her operative second amended complaint on March 17, 2016.
In April 2017, Enterprise moved for summary judgment. The motion was supported by evidence establishing the following facts about the ownership history of the Oldsmobile involved in Hernandez's accident: The car was manufactured by General Motors Corporation. From May 1992 until February 1993, NCRS used the Oldsmobile in its car rental business. On February 26, 1993, NCRS transferred ownership of the Oldsmobile to a married couple (the S. family). The Oldsmobile was transferred to another private party in 2000 and again in February 2004.
The summary judgment evidence also established the following facts about NCRS: In 1995, NCRS sold the assets of its rental car business to NCR Acquisition. NCRS then changed its name to GM National Holding Co. and in 1996 merged with General Motors Corporation. Meanwhile, NCR Acquisition changed its name to National Car Rental Systems (New NCRS). In 2001, New NCRS declared bankruptcy. In 2003, Cerberus Capital Management L.P. purchased the assets of New NCRS pursuant to an "Asset Purchase Agreement" that was approved by the bankruptcy court.
According to Hernandez's complaint, Enterprise is a joint owner of the assets of the NCRS rental car business that were purchased by Cerberus in 2003. Enterprise did not dispute this allegation in its summary judgment motion.
In July 2017, the trial court granted Enterprise summary judgment, finding that Hernandez could not hold Enterprise strictly liable for damages allegedly caused by the defective Oldsmobile for two reasons. First, as a lessor of the vehicle, the original NCRS was strictly liable for a lessee's damages resulting from a product defect, but its exposure to strict liability ended when it sold the Oldsmobile to the S. family as a used car. Second, even if NCRS retained strict liability for the defective Oldsmobile, that liability cannot be traced to Enterprise.
DISCUSSION
Summary judgment may be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ( Code Civ. Proc., § 437c, subd. (c) ;
*192 Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 850, 107 Cal.Rptr.2d 841, 24 P.3d 493 ( Aguilar ).) "We review a trial court's grant of summary judgment de novo. [Citation.] '[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact.' " ( Casey v. Perini Corp. (2012) 206 Cal.App.4th 1222, 1228, 142 Cal.Rptr.3d 678.)
Hernandez contends that summary judgment of her case must be reversed because there are triable issues regarding (1) NCRS's strict liability for alleged defects *471 in the Oldsmobile, and (2) Enterprise's liability as a successor of NCRS. We question whether Enterprise has established, as a matter of law, that NCRS was not strictly liable for defects in the 1992 Oldsmobile after it sold the vehicle. However, we need not resolve those difficult issues because the summary judgment evidence establishes no triable issue on the second ground upon which summary judgment was granted, regarding Enterprise's liability as a successor of the original NCRS.
Even if NCRS would have been strictly liable for a defect in the 1992 Oldsmobile, Hernandez has to establish that Enterprise acquired successor liability for the alleged defect. Hernandez argues she can make this showing by establishing that (1) New NCRS became strictly liable for the product defect in the Oldsmobile when it acquired the assets of NCRS, and then (2) the Cerberus entities became strictly liable for that defect when they purchased the assets of New NCRS out of bankruptcy. We conclude this successor liability theory fails as a matter of law on both of these points.
I. Successor Liability Principles
Under generally accepted rules, when a corporation purchases the principal assets of another corporation, "the purchaser does not assume the seller's liabilities unless (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." ( Ray v. Alad Corp. (1977) 19 Cal.3d 22, 28, 136 Cal.Rptr. 574, 560 P.2d 3 ( Alad ).)
In Alad , the Supreme Court carved out an exception to these traditional rules by establishing a three-prong test for plaintiffs in product liability cases to hold a successor to a manufacturer strictly liable for the plaintiff's injuries. ( Alad , supra , 19 Cal.3d at pp. 30-31, 136 Cal.Rptr. 574, 560 P.2d 3.) Under the Alad test, a corporation that purchases the assets of a manufacturing business assumes the *193 seller's liabilities for a defective product when all of the following elements are established: (1) the plaintiff's remedies against the seller are virtually destroyed by the purchaser's acquisition of the business; (2) the purchaser has the ability to assume the seller's risk-spreading role; and (3) it is fair to require the purchaser to assume responsibility for the defective products as a burden necessarily attached to the seller's goodwill, which the purchaser enjoys in the continued operation of the business. ( Ibid. )
Though originally applied to a product manufacturer, the Alad test is now used to determine successor liability for other entities that participated in the production and distribution of a defective product. ( Kaminski v. Western MacArthur Co. (1985) 175 Cal.App.3d 445, 453-454, 220 Cal.Rptr. 895 ( Kaminski ); Phillips v. Cooper Laboratories (1989) 215 Cal.App.3d 1648, 1654, 264 Cal.Rptr. 311 ( Phillips ).) Given the policies underlying strict liability, "[w]hen a distributor or retailer acquires a corporation and takes advantage of its goodwill and other corporate assets and facilities to inject the predecessor's product line into the stream of commerce, it continues 'the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products.' " ( Kaminski at p. 456, 220 Cal.Rptr. 895.) Courts applying this test have emphasized that the successor does not have to cause the destruction of the plaintiff's remedies before it will be held liable, as long as there is a causal connection between the *472 successor's acquisition and the unavailability of the predecessor as a potential defendant. ( Stewart v. Telex Communications, Inc. (1991) 1 Cal.App.4th 190, 198-199, 1 Cal.Rptr.2d 669 ( Stewart ); Kaminski, supra , 175 Cal.App.3d at p. 458, 220 Cal.Rptr. 895.)
II. Analysis of Asset Sale to New NCRS
The summary judgment evidence shows that after NCRS sold its principal assets to New NCRS in 1995, NCRS continued to exist as a legal entity under a different name until it merged with General Motors in 1996. Thus, the asset sale did not destroy or diminish Hernandez's remedies against NCRS. If NCRS was strictly liable for the allegedly defective 1992 Oldsmobile, that liability was assumed by General Motors, not by New NCRS.
Evidence establishing these facts includes documents pertaining to the 1995 sale of the assets of NCRS to New NCRS, which were produced during a demurrer proceeding and are included in Appellant's Appendix.[1] Excerpts from a Form 10-K/A and a Form 8-K that General Motors filed with the *194 Securities and Exchange Commission (SEC) describe a sale of substantially all of the operating assets of its subsidiary NCRS, a transfer of "certain liabilities" to the entity that later became New NCRS, and the retention of responsibility by General Motors for the sale and liquidation of NCRS's remaining assets and considerable liabilities that were not sold to New NCRS. The record also documents the name change of NCRS and its merger into General Motors in 1996. In light of this evidence, Hernandez conceded during discovery and during the summary judgment proceeding that, after NCRS sold its car rental business and changed its name to GM National Holding Co., it merged with General Motors.
As a result of this two-part transaction, well-settled principles of successor liability establish General Motors as the corporation that succeeds to NCRS's strict liability for defective products. General Motors succeeds to NCRS's liabilities because when a corporation merges with its subsidiary, the surviving corporation succeeds to the erstwhile subsidiary's liabilities, even if the operating assets of the subsidiary have been transferred elsewhere. ( Petrini v. Mohasco Corp. (1998) 61 Cal.App.4th 1091, 1098, 71 Cal.Rptr.2d 910 ( Petrini ).) For example, in Petrini defendant Mohasco Corporation owned a wholly-owned subsidiary that made floor tiles containing asbestos. ( Id. at p. 1093, 71 Cal.Rptr.2d 910.) Deciding to liquidate this subsidiary, Mohasco caused its floor tile business to be sold to unrelated third parties. ( Ibid. ) When little more than a corporate shell remained of the subsidiary, Mohasco merged with it, becoming responsible for its liabilities. ( Id. at pp. 1093, 1098, 71 Cal.Rptr.2d 910.) As our colleagues in Division Two explained, "The surviving corporation under a statutory merger is responsible for the liabilities of the merged corporation under both common law and statute," including liabilities unknown at the time of the merger such as Mr. Petrini's later-manifesting mesothelioma. ( *473 Id. at pp. 1098-1099, 71 Cal.Rptr.2d 910.) Here, General Motors stands in the same position as did Mohasco; having sold off the operating business of its NCRS subsidiary and then merging with what remained of NCRS, General Motors succeeds to NCRS's liabilities, including any strict liability for Hernandez's accident.
Because General Motors succeeds to NCRS's liabilities, New NCRS does not. This is a straight-forward application of Alad , which requires, as its first condition for imposing successor liability on the purchaser of a product line, a "virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business." ( Alad , supra , 19 Cal.3d at p. 31, 136 Cal.Rptr. 574, 560 P.2d 3.) The first prong of the Alad test is not met here, where New NCRS's acquisition of the car rental business did nothing to destroy or impair plaintiff's remedies against the original NCRS. The transfer of assets to New NCRS did not prevent Hernandez from seeking recourse against General *195 Motors, so Alad 's special rule for successor liability in product-line cases does not impose liability on New NCRS. (See Phillips , supra , 215 Cal.App.3d 1648, 264 Cal.Rptr. 311 ; Kline v. Johns-Manville (9th Cir. 1984) 745 F.2d 1217 ( Kline ).)
The facts of Phillips are somewhat convoluted but offer an instructive parallel. Ms. Phillips and her husband attempted to sue a company (Cooper Laboratories, Inc.) that succeeded to the liabilities of a company (SMP-NY) that had purchased, for adequate consideration, a fertility drug distribution business from E.S. Miller Laboratories, Inc. (Miller). ( Phillips , supra , 215 Cal.App.3d at pp. 1652, 1655, 264 Cal.Rptr. 311.) Miller and SMP-NY were both subsidiaries of Nestle, and after Miller sold the drug distribution business to SMP-NY, Miller continued as a profitable subsidiary, running warehouse operations for a decade until Nestle dissolved it. ( Id. at p. 1658, 264 Cal.Rptr. 311.) When plaintiffs sought to hold Cooper strictly liable for injuries allegedly suffered as a result of Ms. Phillips having ingested Miller's fertility drug, they failed. Cooper was not liable under Alad because the transfer of the drug distribution business from Miller to SMP-NY did not cause " 'the virtual destruction of the [Phillipses'] remedies against' " Miller. ( Id. at p. 1657, 264 Cal.Rptr. 311.) Miller had "continued as a separate viable corporate entity" and in the ensuing decade "was more profitable as a warehouse operation than it had been as a pharmaceutical operation." ( Id. at p. 1658, 264 Cal.Rptr. 311.) So, here, NCRS continued as a viable corporate entity after the sale of its car rental business, until its assets and liabilities were assumed by merger with General Motors. Nothing about the sale of its assets to New NCRS inhibited, let alone destroyed, Hernandez's remedies against NCRS, as she could have proceeded against NCRS or, after the merger, against General Motors for years after the sale to New NCRS.
Our dissenting colleague discounts evidence tracing successor liability for NCRS to General Motors, positing that corporate successorship liability may fall simultaneously on two companies if both have a sufficient relationship to the predecessor corporation. (Dissent, pp. 489-90.) We think this theory is inconsistent with the first requirement of Alad , that one who buys the assets and continues the operations of a business will be strictly liable for previously-sold products only if the purchaser's acquisition effectively destroyed the plaintiff's remedies against the seller. ( Alad , supra , 19 Cal.3d at pp. 30-31, 136 Cal.Rptr. 574, 560 P.2d 3.) The evidence that General Motors's spin-off of NCRS's car rental business did not impair Hernandez's remedies against NCRS is therefore *474 dispositive of her effort to hold the unrelated acquiring company liable for her accident.
The Kaminski case on which the dissent relies is not to the contrary. The Kaminskis alleged injury as a result of asbestos supplied by, among others, a defunct corporation called Western Asbestos, and they sued in place of Western Asbestos a corporation named Western MacArthur that was carrying *196 on Western Asbestos's business. (Kaminski, supra , 175 Cal.App.3d at pp. 451, 455, 220 Cal.Rptr. 895.) Kaminski held that Western MacArthur was liable as a successor corporation because Western MacArthur's parent had used its "financial and managerial control" over Western Asbestos to "cause it to dissolve," thereby "extinguish[ing] the Kaminskis' remedies against Western [Asbestos]." ( Id. at pp. 458-454, 220 Cal.Rptr. 895.) These facts satisfied the "virtual destruction of plaintiff's remedies" prong of Alad , notwithstanding that the Kaminskis could (and did) also sue and settle with the other defendants who they alleged had manufactured or distributed asbestos that caused their harm. ( Id. at pp. 450, 459, 220 Cal.Rptr. 895.) "The presence of another legitimate target defendant" in a case alleging joint and several liability against multiple tortfeasors "does not defeat successor liability" under Alad , the Kaminski court held. ( Id. at p. 459, 220 Cal.Rptr. 895.) But Kaminski is distinguishable from Hernandez's case, where nobody relies on the existence of jointly and severally liable co-defendants to argue against successor liability for New NCRS. Here, unlike in Kaminski , the predecessor corporation did not dissolve but was merged into a successor, so that plaintiff's remedies against NCRS were not extinguished in the transaction.
Hernandez herself has never argued that NCRS transferred liability for the Oldsmobile to more than one entity. To the contrary, she insists that New NCRS rather than General Motors acquired NCRS's strict liability for defects in the 1992 Oldsmobile, but she makes this argument without relying on the Alad test. Instead, Hernandez argues that summary judgment should not have been granted because Enterprise failed to discredit theories of successor liability pleaded in her complaint, which relied on traditional exceptions to the general rule of successor non-liability.
The complaint alleges that Enterprise assumed strict liability for Hernandez's injuries because Enterprise "continued the business of NCRS," "merged with NCRS," and/or "assumed the liabilities of NCRS." These legal theories are not fleshed out by any allegations of material fact, however, and Hernandez has abandoned any allegation that Enterprise or New NCRS merged with NCRS. She argues on appeal that (1) New NCRS was a mere continuation of Old NCRS, and (2) New NCRS expressly assumed the liabilities of Old NCRS. We reject both arguments.
Hernandez's theory that New NCRS succeeded to NCRS's liabilities as a mere continuation of the prior company relies on the undisputed evidence that New NCRS continued to operate NCRS's rental car business after acquiring its assets. But more is required. To establish that an acquiring corporation is a mere continuation of the seller, a plaintiff must "demonstrate '(1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; [or] (2) one or more persons were officers directors, or stockholders of both *197 corporations.' " ( CenterPoint Energy, Inc. v. Superior Court (2007) 157 Cal.App.4th 1101, 1121, 69 Cal.Rptr.3d 202.) "[E]ven when the same persons are officers or directors of the two corporations, liability is not imposed on the acquiring corporation *475 when recourse to the debtor corporation is available and the two corporations have separate identities." ( Beatrice Co. v. State Bd. of Equalization (1993) 6 Cal.4th 767, 778, 25 Cal.Rptr.2d 438, 863 P.2d 683.)
Here, the record establishes that recourse to NCRS and then its merger partner remained available, and the selling and acquiring companies were separate entities. According to General Motors's and New NCRS's SEC filings, New NCRS paid approximately $1.5 billion to acquire the assets of NCRS, a sum much larger than the net liabilities NCRS retained. More importantly, General Motors became responsible for the assets and liabilities not sold to New NCRS, and then merged with NCRS after the sale. Hernandez has neither alleged facts in her complaint nor introduced evidence in opposition to the motion for summary judgment that would create an issue of material fact as to either the corporate separateness of NCRS and New NCRS, or the adequacy of the resources available for meeting claims against NCRS after the sale of its operating assets to New NCRS.
As for Hernandez's theory of express assumption, she has admitted in an interrogatory response that she does not have documentary evidence that New NCRS expressly assumed liability from NCRS for accidents such as hers. The same interrogatory response baldly asserts, without support or explanation, that Enterprise does have such documents, but the response goes on to admit that Hernandez sought the documents in discovery without success. For good measure, counsel for Enterprise represented to this Court at oral argument that his client does not have the transaction documents that show what liabilities New NCRS acquired along with the assets it purchased from NCRS. Hernandez's unsupported allegation that Enterprise has evidence that it insists it does not have does not detract from the force of her admission that, after pursuing relevant discovery, she still lacks evidence to establish that New NCRS expressly assumed NCRS's liability for this accident. A defendant satisfies its summary judgment burden by producing evidence of this kind of admission. ( Aguilar, supra , 25 Cal.4th at p. 855, 107 Cal.Rptr.2d 841, 24 P.3d 493.)
Enterprise having carried its initial burden of producing evidence that New NCRS did not assume the liabilities of NCRS after it acquired the rental car business, the burden shifted to Hernandez to show a triable issue of material fact regarding the alleged successor liability of New NCRS. ( Aguilar , supra , 25 Cal.4th at p. 853, 107 Cal.Rptr.2d 841, 24 P.3d 493.) She did not carry that burden. This failure alone justifies affirming the trial court's grant of summary judgment, but we nevertheless turn to the second part of Hernandez's successor liability theory, purporting to trace strict liability from New NCRS to Enterprise.
*198 III. Analysis of Cerberus's Purchase Out of Bankruptcy Estate
The summary judgment evidence shows that New NCRS went into bankruptcy in 2001 and that the Cerberus entities purchased assets from the New NCRS bankruptcy estate in 2003 pursuant to an agreement that was approved by the bankruptcy court. This evidence supports Enterprise's argument that it did not assume the alleged strict liability of New NCRS for a product defect in the 1992 Oldsmobile by acquiring the rental car business from New NCRS. If Hernandez's remedies against New NCRS were destroyed, that destruction was not caused by Cerberus's acquisition of the assets, but by the fact that New NCRS went into bankruptcy. (See *476 Stewart, supra , 1 Cal.App.4th at pp. 196-200, 1 Cal.Rptr.2d 669 [first element of Alad missing where successor corporation buys assets out of bankruptcy estate]; Nelson v. Tiffany Industries, Inc. (9th Cir. 1985) 778 F.2d 533, 537-538 [same]; Kline, supra , 745 F.2d at pp. 1219-1220 [ Alad test not satisfied when asset sale was unrelated to subsequent bankruptcy].)
The Stewart case illustrates the significance of a predecessor company's bankruptcy for successor liability under Alad. Stewart was horribly burned while installing an allegedly defective antenna manufactured, designed, and distributed by a company called Hy-Gain Electronics Corp. (Hy-Gain). ( Stewart , supra , 1 Cal.App.4th at pp. 192-193, 1 Cal.Rptr.2d 669.) By the time of the accident, Hy-Gain "had long since declared bankruptcy and gone out of business." ( Id. at p. 192, 1 Cal.Rptr.2d 669.) The bankruptcy trustee had sold essentially all of Hy-Gain's assets-manufacturing facilities and equipment, inventory, designs, blueprints, patents, trademarks, customer lists, sales orders, and so on-to defendant Telex Communication's Inc. (Telex), which then continued to operate the antenna business and to sell the same model of antenna under the same trade name as the antenna that later injured Stewart. ( Id. at pp. 193-195, 1 Cal.Rptr.2d 669.) The Stewart court recognized that "the sole distinction between Alad and the present case is that 'Telex purchased Hy-Gain assets through the intermediary of the bankruptcy courts[ ] rather than directly,' " but it nonetheless held that Telex was not liable as Hy-Gain's successor. ( Id. at pp. 196, 200, 1 Cal.Rptr.2d 669.) It explained that without some showing that Telex played a role in causing the voluntary bankruptcy of Hy-Gain, or that the bankruptcy "was a mere subterfuge to avoid the holding of Alad ,[ ] summary judgment was properly granted, as the Alad exception was inapplicable to Telex." ( Id. at p. 200, 1 Cal.Rptr.2d 669.)
Here, New NCRS's bankruptcy preceded by two years the sale of assets to the Cerberus entities, and there is no evidence that any successor to New NCRS's business line played a role in curtailing or destroying Hernandez's remedies against New NCRS. (Compare Kaminski, supra , 175 Cal.App.3d 445, 220 Cal.Rptr. 895.) Thus, under the well-established rule of Stewart , the Alad exception to the *199 general rule against successor liability does not apply to the transfer of assets from New NCRS to Cerberus.
Hernandez contends there is a triable issue of material fact regarding the successor liability of Cerberus because, when the Cerberus entities purchased New NCRS's assets in 2003, they expressly assumed liability for product defects in the 1992 Oldsmobile and for accidents involving that vehicle.
The record contains a copy of a 2003 Asset Purchase Agreement (APA) pursuant to which ANC Rental Corporation and its subsidiaries including New NCRS, collectively referred to as debtors, sold assets relating to their operation of multiple car rental businesses to a group of sellers that included Cerberus. The parties agree that this APA was the agreement that accomplished the transfer of assets from the New NCRS bankruptcy estate to the Cerberus affiliates.
Article II of the APA, which is titled "PURCHASE AND SALE OF ACQUIRED ASSETS," is divided into several sections. Section 2.1 contains a broad definition of acquired assets, covering all of the sellers' rights in their business, properties, and assets. A non-exclusive list of said assets includes "all vehicles ... owned by any Debtor used in the Business." Section 2.2, titled "Excluded Assets," lists assets of the debtors that are not included in the definition of Acquired *477 Assets and are not part of the sale. This list of excluded assets states that the equity securities of specific subsidiaries including New NCRS are not acquired assets within the meaning of the APA. Section 2.3, which is titled "Assumed Liabilities," contains a list of specific liabilities that the purchasers agree to assume from the seller entities (including New NCRS). Hernandez contends that two provisions in section 2.3 establish that Cerberus expressly assumed liability for a product defect in the 1992 Oldsmobile that later came to be involved in her accident.
First, Hernandez contends the Cerberus purchasers are liable to her under section 2.3(d) of the APA, which provides that the purchasers will assume liabilities "relating to or incurred in connection with the Acquired Assets ... that arise after the Closing Date." She reasons that (1) "Acquired Assets" included the rental car company assets of New NCRS, and (2) liability for her accident was incurred after the closing date of the agreement. However, the undisputed evidence shows that NCRS sold the 1992 Oldsmobile in 1993. Thus, this vehicle was not an asset of New NCRS in 2003 and therefore not an "Acquired Asset" of the purchasers under the terms of the APA. Applying the APA's definition of "Acquired Asset," the Oldsmobile was not a vehicle "owned by any Debtor" involved in the transaction. Moreover, the summary judgment evidence shows that New NCRS, the bankrupt corporation, was not acquired in toto by Cerberus, even if its assets were. This means that *200 Cerberus never acquired any asset-neither the car nor the corporation-to which liability for Hernandez's future accident could have attached.
Second, Hernandez relies on section 2.3(g), pursuant to which the purchasers assumed the following liabilities: "(g) Liabilities (except for vicarious Pre-Petition Liabilities arising from pre-petition auto accidents) relating to accidents involving the vehicles of the Business ... (i) reflected on or of a category reserved against on the March 31, 2003 consolidated balance sheet of Seller and outstanding on the Closing Date or (ii) incurred in the Ordinary Course of Business after March 31, 2003."
The Oldsmobile was not a "vehicle of the Business" when the Cerberus transaction took place, in that NCRS had a decade earlier sold the Oldsmobile to a private party. Hernandez contends that section 2.3(g) necessarily applies to vehicles that were formerly used by NCRS, the predecessor to the bankrupt seller here. We disagree. The contract language unambiguously limits assumed liabilities to "the vehicles of the Business," and it defines "Business" as "car rental businesses" licensed and operated under brand names including National. We find no basis for extending this language to include vehicles previously owned by such businesses. The Oldsmobile was a vehicle of NCRS for less than a year before it was sold to the S. family in 1993. This vehicle was not transferred to New NCRS when New NCRS purchased the assets of NCRS in 1995. Thus, the Oldsmobile was never a vehicle of the business of New NCRS, and not a vehicle of any relevant business when the Cerberus transaction occurred in 2003. We reject Hernandez's argument that there is any absurdity in construing section 2.3(g) in this manner. The APA was dated as of June 12, 2003 and section 2.3(g) addresses covered accidents before and after the close of the previous quarter. In section 2.3(g), Cerberus assumes liability for accidents "incurred in the Ordinary Course of Business after" the close of the previous quarter but only for "vehicles of the Business," and nothing in this provision sweeps *478 in liability for vehicles never owned by New NCRS at all.
Finally, Hernandez contends that even if Cerberus did not expressly assume liability for alleged defects in the Oldsmobile, as a matter of law the sale of assets from the bankruptcy estate of New NCRS did not eliminate successor liability based upon claims that had not arisen at the time of the sale. Hernandez's only authority for this proposition is Elliott v. GM LLC (In re Motors Liquidation Co.) (2nd. Cir. 2016) 829 F.3d 135 ( Elliott ), which is inapposite. That case involved the Chapter 11 bankruptcy of General Motors pursuant to which "Old GM used 11 U.S.C. § 363 of the Bankruptcy Code ... to sell its assets to New GM 'free and clear.' " ( Id. at p. 143.) The question presented was whether New GM could "use the Sale Order's 'free and clear' provision to shield itself from claims primarily *201 arising out of" a product defect that General Motors knew (or should have known) about, but had not disclosed by the time of the bankruptcy. ( Id. at pp. 152, 159.) In circumstances not relevant here, the Second Circuit concluded that the answer to this question is yes. ( Id. at p. 156.) But in reaching this conclusion it also considered the circumstance of a hypothetical future tort claimant whose claim, although resulting from the debtor's pre-petition conduct, does not accrue until a post-petition accident occurs. ( Ibid. ) The claims of these individuals (like Hernandez) will not be subject to the jurisdiction of the bankruptcy court because they are still "completely unknown and unidentified at the time" of the bankruptcy. ( Ibid. )
There is no dispute in this case that Hernandez did not have a claim against New NCRS that the bankruptcy court could have discharged. After all, her accident had not occurred when New NCRS filed its Chapter 11 petition. But this limitation on the reach of federal bankruptcy law in no way detracts from the state-law rule, articulated in Stewart and applied in both state and federal cases as a matter of California law, that absent unusual circumstances not present here, successor liability under Alad will not reach a successor who purchases assets out of a bankruptcy estate. (See Stewart , supra , 1 Cal.App.4th at p. 200, 1 Cal.Rptr.2d 669 ; Nelson v. Tiffany Industries, supra , 778 F.2d at p. 537 ["it was Moody's bankruptcy and not Tiffany's subsequent purchase of the assets that destroyed Nelson's remedies"]; see also Schuman v. Varn Internat., Inc. (W.D.Wash. Sep. 10, 2012, No. C10-980-RSM) 2012 WL 3985784 at p. *3, 2012 U.S. Dist. LEXIS 129221 at p. *9 [collecting authority].) These cases turn on whether the successor corporation caused the financial difficulties that led the predecessor to be unavailable to cover liabilities to future tort victims, not on the scope or specifics of federal bankruptcy law. The portions of Elliott on which Hernandez relies address a different question not relevant here: whether a bankruptcy court's order has the power to extinguish such claims. ( Elliott, supra , 829 F.3d at p. 152 ; see also Morgan Olson L.L.C. v. Frederico (In re Grumman Olson Indus. ) (S.D.N.Y. 2012) 467 B.R. 694, 702 [distinguishing the question whether "there is a viable basis for state successor liability based on prepetition conduct of the debtor" from the question whether "a bankruptcy court's sale order may be enforced to extinguish those claims where no injury occurred to the claimant until after the bankruptcy closed"].) Enterprise does not rely on the terms of the bankruptcy court's sale order in this case, but on the fact that New NCRS went into bankruptcy in the first place. Thus Stewart , rather than Elliott , provides the rule of decision.
In sum, the record evidence establishes as a matter of law that, for two independent reasons, Enterprise did not succeed *479 to any liability NCRS would have had for Hernandez's injuries. First, New NCRS did not succeed to NCRS's liability because after the sale of NCRS's assets plaintiffs such as Hernandez could have sought recourse against General Motors. Second, even if New NCRS would have been liable to Hernandez, no such liability carries *202 through to Cerberus and Enterprise after New NCRS entered bankruptcy through no fault of the acquiring entities. Because they did not cause New NCRS's bankruptcy, Cerberus and Enterprise do not come within Alad 's exception to the general rule against successor liability in an asset sale. No triable issue of material fact regarding Hernandez's theory of successor liability remains, and the trial court did not err in granting summary judgment.
DISPOSITION
The judgment is affirmed. Costs are awarded to respondent.
I CONCUR:
BROWN, J.
Dissenting Opinion of Streeter, Acting P. J.

Enterprise's motion for summary judgment states that the motion is based on "all of the pleadings, records, and files herein and on such other argument or documentary evidence as may be presented" at the summary judgment hearing. We assume this is why the Appellant's Appendix that Hernandez filed in this court includes evidence from the superior court record that pertains to the asset sales at issue in this appeal. (See Cal. Rules of Court, Rule 8.124(b)(3)(A) [The Appellant's Appendix "must not ... [c]ontain documents ... that are unnecessary for proper consideration of the issues."].)